THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* HAROLD LILLY, Defendant-Appellee.

Third District   No. 75-82

Opinion filed May 20, 1976.

John D. Sloan, State's Attorney, of Aledo (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Dwight L. Shoemaker, of Aledo, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The People of the State of Illinois appeal from an order allowing a motion to suppress certain evidence.

The defendant, Harold Lilly, was arrested on November 9, 1974, for having no valid driver's license in violation of section 6—101 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 6—101) and for carrying uncased, unloaded guns in a vehicle in violation of section 2.33 of the Game Code of 1971 (Ill. Rev. Stat. 1973, ch. 61, par. 2.33).

On November 19, 1974, defendant's attorney filed a motion to quash the arrest in both cases, but on December 12, 1974, the defendant entered a plea of guilty to the gun charge. He later moved to withdraw this plea and the motion was allowed. On December 18, 1974, the defendant filed a motion to quash the arrest, and, as part of said motion, requested the court to suppress as evidence the uncased, unloaded guns and the fact that defendant had no valid driver's license. Defendant argued that the officer had no reasonable suspicion to stop the vehicle being driven by

him and then interrogate him. After a hearing on the motion, the trial court ruled in favor of defendant and suppressed the evidence.

The defendant testified at the hearing and stated that at 10:30 p.m. on November 9, 1974, he was driving his 1954 Rambler station wagon. At the time, his two sons, his daughter and his daughter-in-law were present with him in the vehicle. They were driving on a gravel one-lane road. The defendant testified that his head and tail lights were on, and that he was travelling about 30 or 35 miles per hour. His car had license plates. As he approached an S-curve, he noticed a car following. Defendant tried to slow down and pull over to the right to allow the vehicle to pass, but the car "flashed its lights" and Lilly stopped. Defendant stated that he had been followed by the car for about one-half mile to three-quarters of a mile. Defendant also stated that he did not believe he had broken any traffic laws.

An officer approached defendant's vehicle and asked him for his driver's license. Defendant said that he had left it in his pants pocket. Defendant then stated he didn't have a driver's license, but that it was "taken away from him." At the officer's request, defendant went back to the squad car to talk with the policeman, who told him that he might let Lilly go if, after calling in, he found nothing "on" him, although he didn't generally do that. The officer then called into Aledo, and, although he found nothing on the defendant, he told Lilly that they would have to go to the station. The officer then approached the side of Lily's car and flashed his light in and saw that Lilly had a couple of guns in the back of the car. The guns were uncased. On cross-examination, Lilly acknowledged that the car was registered to his wife, Doris Lilly. He stated that although the police car was not coming up fairly fast, it was gaining on him, and he gave it room to pass when it was about 100 feet or so behind him. He wanted to let the car pass him since there was a pretty steep hill ahead. Before he slowed down, he was travelling between 10 and 15 miles an hour, but he did not bring his car to a complete stop until the officer turned his red lights on. The first thing the officer asked him was where his driver's license was. On redirect examination, the defendant said that when he asked the officer if he was doing something wrong while driving, the officer responded "no," he just thought Lilly was having car trouble.

Defendant's son, Kenneth Lilly, also in the vehicle at the time the car was stopped, estimated their speed from 5 to 10 miles an hour. He said the officer came up to the window and asked his father to see his driver's license. Kenneth stated that the officer did not give any reason for stopping them. According to Kenneth, the officer stated that he did not have any reason to stop them. Kenneth recalled that the officer said he was breaking in a new man and they had never seen their car before.

The State then called its first witness, David S. Thompson, Mercer County Deputy Sheriff. He testified that he observed an old beat-up car crossing the highway. The officer stated that he turned off route 17 to get a closer view of the vehicle. When asked if he noticed anything unusual about the car, he said that there were several people in it and it had just come off a county road. He followed the vehicle and ran a routine radio check, finding that the vehicle was registered to a Mrs. Lilly of Keithsburg, Illinois. The officer stated that he followed the vehicle from a distance of 200 to 300 feet. He stated that he observed a male subject from that distance operating the vehicle, and that it was travelling at a slow rate of speed. He characterized this rate of speed as "cautious." The officer testified that the vehicle reduced its speed and attempted to pull off the road onto the shoulder and then it came to a complete stop. The officer indicated that he presumed the defendant's car may have had some difficulty, so he stopped behind it to let him know who was approaching and turned on his red light. The officer asked the driver if he was having any problems. The driver said that he was not, that he just pulled off the road to let the officer pass. Since the car was driven by a man (and registered to a woman), the officer asked the driver his name. After the defendant responded and gave his address as Keithsburg, the officer asked defendant what he was doing out there at this time of night. The defendant responded that he was driving down the road. The officer asked to see defendant's operator's license, but Lilly told him that he had not had one for 10 years. The officer testified that when he returned to the car, he noticed there was a rabbit lying in the rear of the station wagon with its head twisted off. He also observed on the rear floor two guns that were out of their cases. The officer stated that he observed these objects after flashing his light inside.

On cross-examination, Thompson acknowledged that until he talked to Lilly, he had no "reason to believe" that Lilly had committed any offense.

The State then called Officer Robert L. Millikan who was with Officer Thompson. Officer Millikan said that he was on the right side of the car when Thompson asked the driver if he was having any problems. The remainder of Millikan's testimony corroborated that of Thompson. On cross-examination, Millikan gave his opinion that they didn't stop the vehicle but it stopped itself on the hill.

After final arguments the trial court granted the motion to quash and to suppress the evidence against the defendant. The trial court stated there was nothing to cause the police officers to stop the defendant in the first instance, other than the indication that something was wrong with defendant's vehicle. Furthermore, the court considered the request to produce a license unjustified in view of the circumstances under which defendant's vehicle was stopped.

The People contend that the trial court erred in granting defendant's motion to quash the arrest, and in granting defendant's request that evidence, concerning the license charge and the gun charge, seized pursuant to that arrest should be suppressed. We cannot agree.

■■ In *People v. Harr*, 93 Ill. App. 2d 146, 235 N.E.2d 1, the police officer had observed the defendant's motor vehicle coming out of a gas station that had been closed for the night. The arresting officer stated that the vehicle and its driver appeared suspicious and since he had not seen the vehicle in the vicinity before, he made a routine stop to determine who the defendant was, where he was going and where he had been. He arrested the defendant for failure to have a driver's license when the license produced by the defendant proved to be an expired license. On appeal, the State relied on the provisions of the Illinois Vehicle Code which provide in substance that every licensee shall have his license in his immediate possession at all times and shall display it upon request. The court held that the facts did not indicate that the police officer stopped the defendant's car for the purpose of enforcing this statute. The court stated further that the statute could not be made applicable as authority to inspect the license as a mere subterfuge to obtain information or evidence not related to the licensing requirement.

■■ We believe that, as in *Harr*, there were no grounds for the arrest of the defendant in the first instance. There was no probable cause or specific facts that reasonably led the officer to stop the car. Therefore, the fruits of the search which ensued were properly held by the trial court to be subject to a motion to suppress.

This case differs from the situation presented when the police officer witnesses an actual traffic violation, such as a speeding vehicle (*City of Crystal Lake v. Woit*, 3 Ill. App. 3d 1059, 280 N.E.2d 4), or a vehicle not bearing license plates (*People v. Hampton*, 5 Ill. App. 3d 220, 282 N.E.2d 469). See *People v. Hays*, 104 Ill. App. 2d 459, 244 N.E.2d 641.

The trial court properly suppressed the evidence. For the reasons stated, the judgment of the circuit court of Mercer County is affirmed.

Judgment affirmed.

ALLOY and BARRY, JJ., concur.