[No. 4466–II.   Division Two.   September 28, 1981.]

THE STATE OF WASHINGTON, *Appellant,* v. KIM STROUD, *Respondent.*

*Curtis M. Janhunen, Prosecuting Attorney,* for appellant.

*John L. Farra,* for respondent.

PETRICH, J.—The State appeals an order suppressing narcotics discovered as a result of an investigatory stop and frisk of Kim Allen Stroud, a passenger in a car parked late at night in an industrial area of Aberdeen. On appeal the central issue is whether there was legal justification for defendant's investigatory detention which did not amount to an arrest, where the record merely reveals that (1) the place of the stop was a "high crime area," and (2) that it was unusual, although not unlawful, for him to be parked at that location at that particular hour of the night. We affirm.

At 1:41 a.m. on June 16, 1979, Aberdeen Police Officers Loyer and Ryan observed a parked car occupied by two men. Although the car was legally parked and the officers were unable to observe any illegal activity within, they pulled up behind and turned on both their flashing light and high beam headlights. Officer Ryan walked to the driver's side of the vehicle as Officer Loyer approached the passenger side. Upon noticing Officer Loyer standing alongside the car, Stroud made a quick motion of his hand down between his legs. Officer Loyer, not knowing whether defendant had "a weapon or what," opened the car door and asked him to step from the vehicle. When defendant complied, Officer Loyer observed a marijuana cigarette on the seat. Upon patting down defendant, the officer discovered a small bag of marijuana. The driver of the vehicle produced another bag. During a booking search, a small

quantity of cocaine was discovered on Stroud's person.

Defendant moved to suppress, and at the suppression hearing, Officer Ryan, who had been driving the patrol car, explained his reasons for approaching the parked car as follows:[1]

> Well, the vehicle was parked on the 100 block of East State Street. It's quite a ways from the Smoke Shop, the Eagles, which do provide their own parking. That time of night we were usually familiar with the vehicles that do park on State Street, there isn't that many.
>
> Also, the fact that we drove by eastbound and brought the car to a near–stop opposite the vehicle and they never noticed us. They were trying to ignore us or didn't see us, and at this time we turned around, pulled in behind them and put the flashing light on and the head-lights on bright, at which time they didn't appear to notice us or were ignoring us.
>
> It also is a high–crime area as the other officer stated; several burglaries, arsons.

The trial court suppressed, as a matter of law, the cocaine seized during the booking search, on the ground that the officers lacked sufficient legal justification to either detain and question defendant or have him step from the vehicle. Under the prevailing law, we are compelled to agree.

■ The first step in our analysis of the question at bench is to determine at what point, if ever, a "seizure" within the meaning of the Fourth Amendment took place. The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention, short of a traditional arrest. *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969). A person is "seized" within the meaning of the Fourth Amendment only when, by means of

---

[1]Contrary to the State's contention, the record does not indicate that the officers' attention was also drawn to the vehicle by the fact that it had out–of–county license plates, since that fact was not ascertained until after the officers reached the station house.

physical force or a show of authority, his freedom of movement is restrained.[2] *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980); *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). There is a "seizure" when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id.* This rule also applies to the stopping of an automobile and detention of its occupants. *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979).

Obviously, not all personal encounters between the police and the general citizenry trigger operation of the Fourth Amendment, for "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio, supra* at 34 (White, J., concurring). Police officers enjoy "the liberty (again, possessed by every citizen) to address questions to other persons," *id.* at 32 (Harlan, J., concurring), although "ordinarily the person addressed has an equal right to ignore his interrogator and walk away". *Id.* at 32–33.

As the United States Supreme Court recently observed in *Mendenhall,* 446 U.S. at 554:

[C]haracterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. "Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. *Haynes* v. *Washington,* 373 U. S.

---

[2]Some more obvious examples of circumstances indicating a seizure, even where the person did not attempt to leave, would be (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching of the citizen, or (4) the use of language or tone of voice indicating that compliance might be compelled. *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

503, 515 [10 L. Ed. 2d 513, 83 S. Ct. 1336]." *Schneckloth v. Bustamonte,* 412 U. S., at 225 [36 L. Ed. 2d 854, 93 S. Ct. 2041].

In the present case, however, we conclude that Stroud was "seized", for Fourth Amendment purposes, at the moment the officers pulled up behind the parked vehicle and switched on the flashing light. Had the operator of the vehicle attempted to drive off after being so signaled, he could arguably have been charged with a misdemeanor. *See* RCW 46.61.010 and 46.61.020.[3] Although Stroud, as a mere passenger, could not have been similarly charged, he was as effectively restrained from leaving the scene as was the person sitting in the driver's seat. Under the totality of the circumstances, the officers' attempt to summon the occupants of the parked car with both their emergency lights and high beam headlights constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative. *Cf. United States v. Palmer,* 603 F.2d 1286, 1289 (8th Cir. 1979) (where officer stopped his car, got out, and repeatedly motioned and called defendants, standing across the street, to come towards him, a seizure occurred). The fact that the officers alighted from their own vehicle and approached the vehicle within which defendant was seated could only have reinforced that impression.

■ Having determined at what point defendant's person was "seized," the remaining and more difficult question is whether that seizure was reasonable, and therefore constitutional. We hold that it was not. To determine the reasonableness of seizures which are less intrusive than traditional arrests, courts balance the public interest in law enforcement against the individual's right to personal security free from arbitrary interference by law officers. *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637

---

[3]RCW 46.61.020 provides *inter alia* that it is "unlawful for any person while operating or in charge of any vehicle . . . to refuse or neglect to stop when signaled to stop by any police officer . . ."

(1979); *Pennsylvania v. Mimms,* 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977); *United States v. Vasquez,* 612 F.2d 1338 (2d Cir. 1979). Consideration of the constitutionality of such seizures involves a weighing of (1) the gravity of the public concern, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. *Brown,* 443 U.S. at 50–51; *Brignoni–Ponce,* 422 U.S. at 878–83. *Accord, State v. Hobart,* 94 Wn.2d 437, 617 P.2d 429 (1980).

In balancing these conflicting interests, we are bound by the standards set forth in *Brown v. Texas, supra,* and as adopted by our State Supreme Court in *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980) (suppressed contraband discovered on passenger in car parked late at night next to closed park in high crime area on ground that such criteria provided inadequate grounds for investigatory stop). *But see State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974)[4] (where police merely observed car in high crime area early in morning pull away from closed tavern on isolated part of block, there was a "well founded suspicion" not amounting to probable cause allowing police to stop the suspects, identify themselves, require occupants to identify themselves, and explain their activity). In *Brown,* 443 U.S. at 51, the court observed:

> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. See *Delaware* v. *Prouse,* 440 U. S. 648, 654–655 [59 L. Ed. 2d 660, 99 S. Ct. 1391] (1979); *United States* v. *Brignoni–Ponce, supra,* at 882 [45 L. Ed. 2d 607, 95 S. Ct. 2574]. *To this end, the*

---

[4]Although in *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980) (*rev'g this court,* 21 Wn. App. 506, 587 P.2d 171 (1978)), the majority opinion did not refer to *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974) and subsequent decisions of the Supreme Court have approvingly cited the case, *see State v. Sieler,* 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); *State v. Hobart,* 94 Wn.2d 437, 443, 617 P.2d 429 (1980), the continued validity of *Gluck* is dubious in view of the *Larson* analysis, which we consider to be controlling.

*Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. Delaware v. Prouse, supra,* at 663 [59 L. Ed. 2d 660, 99 S. Ct. 1391]. See *United States v. Martinez–Fuerte,* 428 U. S. 543, 558–562 [49 L. Ed. 2d 1116, 96 S. Ct. 3074] (1976).

(Italics ours.) *See also United States v. Palmer, supra. Accord, State v. Hobart,* 94 Wn.2d at 443. In the present case, as was true in *Brown* and *Larson,* no contention is made that the stop was made pursuant to a practice embodying explicit, neutral criteria. Accordingly, in order to briefly detain Stroud for questioning, in the absence of probable cause, the officers were required to have, at a minimum, a "reasonable suspicion, based on objective facts, that [he was] involved in criminal activity." *Brown,* 443 U.S. at 51. *Accord, State v. Larson,* 93 Wn.2d at 644. *See also United States v. Cortez,* 449 U.S. 411, 417–18, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981).[5]

Applying these principles to the present case, we hold as a matter of law that the initial seizure of defendant was unconstitutional. The testimony of the officers at the suppression hearing established that the stop was predicated merely on the fact that the vehicle in which Stroud was sitting was parked in an arguably "high crime" area, and that it was unusual albeit not unlawful for cars to be parked in

---

[5]There, the United States Supreme Court most recently addressed the question at bench, reaffirming the principle set forth in *Brown,* 443 U.S. at 48, as follows:

"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self–defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, *e. g., Brown* v. *Texas, supra,* at 51 [61 L. Ed. 2d 357, 99 S. Ct. 2637]; *United States* v. *Brignoni–Ponce, supra,* at 884 [45 L. Ed. 2d 607, 95 S. Ct. 2574]."

that particular location at that hour of the night. No assertion was made that a crime had been committed that night in the vicinity, or even that the officers specifically suspected either Stroud or the driver of the car of involvement in criminal activity. When confronted with substantially the same set of facts, our State Supreme Court in *Larson,* held, as we must, that an adequate legal foundation was lacking for an investigatory stop.

Although we believe that police officers should be encouraged to investigate suspicious situations, as the court recognized in *Larson,* and also that evidence supporting an investigatory stop "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement", *United States v. Cortez,* 449 U.S. at 418, we conclude that the investigatory stop of defendant was unreasonable because the officers were unable to articulate specific, objective facts upon which to base a reasonable suspicion that Stroud was engaged in criminal activity. *Brown v. Texas, supra; State v. Larson, supra.* Since the initial stop was invalid, it naturally follows that the further intrusion of having Stroud step from the car was also impermissible. Although as the State correctly contends, it may in some instances be prudent, for purposes of an officer's own personal protection, to have detained motorists step from their vehicles, such precautions are proper only where the officer has rightfully, in the performance of his duty, placed himself within the sphere of harm. *See Pennsylvania v. Mimms,* 434 U.S. at 106 (where initial stop for traffic violations is valid, having suspect alight from vehicle is a de minimis intrusion). *See also* 3 W. LaFave, *Search and Seizure* § 9.4, at 109 (1978). *But cf. State v. Hobart,* 94 Wn.2d at 445 (implying patdown may have been proper had defendant made "furtive gestures," even though reason for initial contact insufficient).

The suppression order and resulting dismissal are

affirmed.

PEARSON, J., concurs.

REED, C.J. (concurring in the result)—I concur in the result solely because I believe the suppression of evidence is mandated by the majority opinion in *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980).

*Larson* holds that it was unreasonable under the Fourth Amendment for the police to make an investigative stop of a car which they observed parked illegally with three occupants at 3 a.m.—in a high crime area, on the side of the street next to a closed public park, opposite an apartment house that had recently been burglarized several times—and which began to drive away as the police car pulled up. The *Larson* stop is factually indistinguishable from the circumstances in *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974), in which the Supreme Court held that the police had a "well–founded" suspicion justifying a stop for a brief inquiry, arising out of the following facts stated at page 425:

> Between 4 and 5 a.m. on July 24, 1971, two city policemen were patrolling an industrial area of Seattle, Washington, in which there had been an increasing number of burglaries. As the officers approached a tavern, which was in an isolated part of a block, a car parked in front of the tavern was driven away from the curb and its lights turned on. After following the car for about 1½ miles, the officers stopped it and requested identification of the two occupants.

Likewise, in this case the officers testified that they had patrolled the site of the stop, often at night, for 20 months and 7 years, respectively; that the area had been hit with several burglaries and two arson fires and was a "high crime" area; that they were familiar with the vehicles usually parked in that vicinity at 1:41 a.m., and the subject car was unfamiliar; that they drove by slowly and were either ignored or not seen by the car's two occupants; and that they decided to check the vehicle because it "appeared sus-

picious" for the foregoing reasons. The similar facts of this case supply an adequate justification for the stop under *Gluck,* but not under *Larson,* in which the facts were even more suspicious than here.

The law governing a brief stop—a seizure—of a vehicle in such circumstances has not changed in substance since *Gluck. Gluck's* test of a "well–founded suspicion not amounting to probable cause," 83 Wn.2d at 426, differs only semantically from the test applied in *Larson:*

> We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. *United States* v. *Brignoni–Ponce, supra,* at 880–881 [45 L. Ed. 2d 607, 95 S. Ct. 2574]. See *Terry* v. *Ohio, supra,* at 25–26 [20 L. Ed. 2d 889, 88 S. Ct. 1868]. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Delaware* v. *Prouse, supra,* at 663 [59 L. Ed. 2d 660, 99 S. Ct. 1391]; *United States* v. *Brignoni–Ponce, supra* at 882–883; see also *Lanzetta* v. *New Jersey,* 306 U. S. 451 [83 L. Ed. 888, 59 S. Ct. 618] (1939).

*Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979).

The *Gluck* rule has been, and continues to be, followed by the appellate courts of this state—even after *Larson. See, e.g., State v. Sieler,* 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); *State v. Hobart,* 94 Wn.2d 437, 443, 617 P.2d 429 (1980); *State v. Lesnick,* 84 Wn.2d 940, 943, 530 P.2d 243 (1975); *State v. Sykes,* 27 Wn. App. 111, 115, 615 P.2d 1345 (1980); *State v. Serrano,* 14 Wn. App. 462, 465, 544 P.2d 101 (1975). *Gluck* is cited with apparent approval by Professor Wayne LaFave in volume 3 of his treatise *Search and Seizure* § 9.3, at 72 (1978). Yet, curiously, the majority in *Larson* did not cite *Gluck,* let alone attempt to distinguish it. Rather, it was left to Justice Horowitz, in his dissent in *Larson,* to explain why *Gluck* should control.

I believe the facts in this case supply a sufficient basis,

whether it be called a "well–founded suspicion" or a "reasonable suspicion, based on objective facts" for the Aberdeen police to have briefly investigated the car in which defendant was sitting at that wee hour, in that suspicious location, if *Gluck* were followed. I think Justice Horowitz and the other dissenters were correct in *Larson*, and that the seizure here and the activity that flowed from it were reasonable under the Fourth Amendment. It is obvious, however, from Justice Horowitz's dissent that the *Larson* majority was aware of *Gluck* but chose not to follow it. We must, therefore, reluctantly uphold this suppression decision as the unavoidable mandate of *Larson*.

Reconsideration denied October 28, 1981.

Review denied by Supreme Court January 8, 1982.