[No. 6446-4-II.   Division Two.   February 28, 1985.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES V. CHISHOLM, *Respondent.*

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for appellant.

*C. Michael McLean,* for respondent.

REED, A.C.J.—A Longview police officer stopped a pickup truck solely for the purpose of informing the driver that his hat was in jeopardy of blowing out of the bed of the vehicle. The trial court concluded that, there being no reasonable suspicion of criminal activity, the stop was improper, and granted defendant's motion to suppress a quantity of marijuana subsequently found on defendant's person. The State appeals from the trial court's dismissal of the charge against defendant. We reverse and remand.

On November 15, 1980, at approximately 12:30 a.m., Sergeant Cowan of the Longview Police Department observed a pickup truck moving in traffic with a hat resting on top of the cab. The officer, driving an unmarked police vehicle, watched as the hat blew into the bed. Concerned that the hat was endangered, Sergeant Cowan attempted to stop the truck. Having no success, the officer summoned a marked police vehicle to make the stop. No traffic or criminal violations were observed or suspected at that time.

Upon walking up to the cab, Sergeant Cowan saw an

open can of beer between the driver and his passenger, James Chisholm, both known by Sergeant Cowan to be minors. The occupants were placed under arrest and a later search of Chisholm's person produced a quantity of marijuana, for which he was charged with possession.

Although there is substantial case law concerning the propriety of traffic stops made to enforce penal or regulatory law, we have found virtually no authority passing on the propriety of a stop made solely to assist the occupants of a vehicle.[1] We look for guidance, then, in fundamental Fourth Amendment principles. A review of those principles will provide a framework for a discussion of the specific facts present here.

First, we note that a vehicle stop, even for a benign purpose, must be made in harmony with the Fourth Amendment proscription against unreasonable searches and seizures. *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). Whether a given stop is unreasonable "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). *See also Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967).

Ordinarily, the balance between public and individual interests is accurately measured by the presence or absence of "probable cause." On occasion, the less demanding "reasonable suspicion" standard is employed.[2] Here, the trial court concluded that the absence of reasonable suspicion to believe criminal activity was afoot rendered the stop unlawful. We disagree. Neither "probable cause" nor "reasonable suspicion" is an appropriate yardstick where the stop was made for noncriminal, noninvestigatory purposes.

---

[1] Our research reveals only one case that discusses a stop made solely to assist the occupant of a vehicle. *See United States v. Dunbar,* 470 F. Supp. 704 (D. Conn.), *aff'd,* 610 F.2d 807 (2d Cir. 1979).

[2] *See, e.g., Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In that context, whether a particular stop is *reasonable* depends not on the presence or absence of "probable cause" or "reasonable suspicion," but rather on a balancing of the competing interests involved in light of all the surrounding facts and circumstances. *See South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Here, an individual's interest in proceeding about his business unfettered by police interference must be balanced against the public's interest in having police officers perform services[3] in addition to the traditional enforcement of penal and regulatory laws. *United States v. Dunbar,* 470 F. Supp. 704 (D. Conn.), *aff'd,* 610 F.2d 807 (2d Cir. 1979). This latter interest is sometimes characterized as "community caretaking functions." *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973).

One might argue that permitting police officers to make stops without "probable cause" or at least "reasonable suspicion" is so fraught with the potential for abuse that a blanket proscription is necessary. We believe that such an approach is an unnecessarily harsh remedy in light of the safeguards offered by a suppression hearing. We trust that the trial judge will discern a legitimate stop from one based on subterfuge. Accordingly, we hold that, in appropriate circumstances, a police officer may stop a vehicle momentarily to warn the occupants that an item of their property is endangered. Such a momentary seizure, being "reasonable," does not require the suppression of contraband or other evidence of crime thereafter discovered merely because the officer lacked probable cause or reasonable suspicion to believe the vehicle's occupants were involved in criminal activity.

Turning to the case at bench, the balance between the competing interests is not such that the court can resolve

---

[3]Many communities look to their officers to assist citizens or render aid under a variety of circumstances. For example, officers often deliver emergency messages, give directions, search for lost children, assist stranded motorists and render first aid.

the issue as a matter of law. Factual questions remain. For example, is it certain that the hat was of such trivial value that no reasonable person would have bothered to warn the owner that it was endangered? Was the hat in danger of being lost after it blew into the bed of the pickup, or would it present a traffic hazard? Was the stop a subterfuge? These factual inquiries, among others, must be resolved by the trial court and the "balancing test" rather than the "probable cause" or "reasonable suspicion" test employed. Accordingly, this cause is remanded for a suppression hearing consistent with this opinion.

It is so ordered.

LANGSDORF, J. Pro Tem., concurs.

PETRICH, J. (dissenting)—The majority states that "the trial court concluded that the absence of reasonable suspicion to believe criminal activity was afoot rendered the stop unlawful." The majority goes on to hold that the reasonable suspicion standard is the inappropriate standard to determine the reasonableness of stops such as here. While I agree with the majority that it is incorrect to apply the reasonable suspicion standard, alone, to this case, I cannot agree with the majority's conclusion that the trial court based its decision to suppress solely upon the reasonable suspicion standard. Instead, I believe the trial court applied the proper "balancing" test when it ruled on the motion to suppress.

Stopping a motor vehicle and detaining its occupants for even a brief time constitutes a "seizure" within the Fourth Amendment.[4] *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). A limited investigatory stop may

---

[4]The "community caretaking functions" referred to by the majority are generally communications between police and citizens involving no coercion or detention amounting to a "seizure," and, therefore, are without the protection of the Fourth Amendment. *See United States v. Berry,* 670 F.2d 583, 591 (5th Cir. 1982).

be justified on less than probable cause if the officer can "point to *specific and articulable facts that give rise to a reasonable suspicion* that there is criminal activity afoot." (Italics mine.) *State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982); *see Delaware v. Prouse, supra; Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

The majority states that "whether a particular stop is *reasonable* depends not on the presence or absence of 'probable cause' or 'reasonable suspicion,' but rather on a balancing of the competing interests involved in light of all the surrounding facts and circumstances." I agree that the reasonableness test includes a balancing of the competing interests. However, the majority ignores the fact that the reasonableness test requires a certain quantum of evidence before the State's interest on balance overrides that of the individual.[5]

> [T]he key principle of the Fourth Amendment is reason-ableness—the balancing of competing interests. But if courts and law enforcement officials are to have workable rules, this balancing must in large part be done on a cat-egorical basis—not in an ad hoc, case–by–case fashion by individual police officers.

(Citations omitted.) *Dunaway v. New York,* 442 U.S. 200, 219–20, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979) (White, J., concurring).

Furthermore, a review of the record indicates that the trial court did not apply the "reasonable suspicion" stand-ard per se to test this stop as held by the majority. The trial court also considered whether an emergency situation existed which would also justify the stop. The elements of the emergency rule are:

---

[5]Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," whether this be probable cause or a *less stringent test.* "In those situations in which the balance of interests precludes insistence upon 'some quantum of individualized suspicion,' *other safeguards* are generally relied upon to assure that the individual's reasonable expectation of privacy is not 'subject to the discretion of the official in the field. . .'". *Delaware v. Prouse,* 440 U.S. at 654–55.

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or *property.*

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

(Italics mine.) *State v. Nichols,* 20 Wn. App. 462, 465–66, 581 P.2d 1371 (1978). I agree with the trial court's implicit finding that the facts in this case do not indicate there was an emergency at hand that necessitated police assistance for the protection of property. Even though not stated in its findings or conclusions, it is readily apparent from the record that the issue of whether an emergency justified the seizure was well briefed to the trial court by both parties and was decided adversely to the State. This is well supported by the State's assignment of error to the court's failure to find that an emergency situation existed which would justify the stop in the absence of a reasonable suspicion of criminal activity. Further, no finding as to a material fact constitutes a negative finding. *Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 658 P.2d 1267 (1983). Thus, I disagree with the majority that the court applied the "reasonable suspicion" standard per se without balancing the public interest in the stop. From the record, it is obvious that the trial court found neither reasonable suspicion of criminal activity nor existence of an emergency. Therefore, the majority's remand for the trial court to resolve factual questions, such as whether the hat was in danger of being lost or presenting a traffic hazard, is simply asking the trial court to do what it has already done.

In my view any exception to the "reasonable suspicion" standard to be applied to noninvestigatory stops should be limited to specific, objective facts which reasonably give rise to an inference that safety or emergency reasons justify the

stop.[6] For "[i]t is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." *Camara v. Municipal Court,* 387 U.S. 523, 530, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). I believe the trial court applied the proper balancing in this case.

I would affirm.

---

[6]This essentially is the holding of *United States v. Dunbar,* 470 F. Supp. 704 (D. Conn.), *aff'd,* 610 F.2d 807 (2d Cir. 1979), which is cited by the majority. This is not the only case which discusses the validity of noninvestigative stops of motor vehicles to assist their occupants. *See People v. Deppert,* 83 Ill. App. 3d 375, 403 N.E.2d 1279 (1980); *People v. Lilly,* 38 Ill. App. 3d 379, 347 N.E.2d 842 (1976). These cases held that the stopping of a motorist in order to see if the motorist is lost, in need of assistance, or having car problems was unreasonable under the Fourth Amendment.