[No. 21697-0-I.  Division One.  June 26, 1989.]

THE STATE WASHINGTON, *Respondent,* v. IVAN BRENT DEARMAN, *Appellant.*

*John Christiansen* and *Dawn Monroe* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Kevin Korsmo, Deputy,* for respondent.

PEKELIS, J.—Ivan DeArman appeals from an order of the Superior Court denying his motion to suppress evidence. He contends that the evidence was the fruit of an automobile stop made in violation of the Fourth Amendment.

At about 2 a.m. on May 20, 1987, at the intersection of Admiralty Way and Gibson Road in South Snohomish County, Deputy Gerald Ross observed an automobile motionless at a stop sign for 45 to 60 seconds. The automobile's brake lights were on, but Ross could not tell if the headlights were on or if the engine was running. There was no other traffic on the roadway, and Ross thought the automobile might be disabled.

Ross approached the automobile and activated his emergency lights. The automobile then moved through the intersection and pulled over to the side of the road about

50 feet past the intersection. Ross realized the automobile was not disabled, but became "a little suspicious."

Ross asked the driver, Ivan DeArman, for identification. DeArman told him that he had no identification and that his driver's license was expired. Ross then asked him to step out of the automobile. Seeing what appeared to be a wallet in DeArman's hip pocket, Ross again asked that DeArman show him some identification. When DeArman took out his wallet, Ross saw a Washington identification card which he asked DeArman to show him. As DeArman handed the card to Ross, he told Ross there were outstanding warrants for his arrest. Ross confirmed this and arrested DeArman.

During an inventory search at the Snohomish County Jail, cocaine was found in DeArman's wallet and he was charged with possession of a controlled substance. DeArman moved to suppress the cocaine at trial, but the trial court denied the motion. The court concluded that Ross's initial contact of DeArman was a valid *Terry*[1] stop because DeArman may have needed help. The court also concluded that DeArman's response to the stop sign and Ross's emergency equipment gave rise to an articulable suspicion of criminal activity which justified the request for identification. DeArman was then convicted at a trial on stipulated facts.

## I

DeArman contends that the cocaine was the fruit of an unreasonable seizure. In order to address this contention, we must first determine at what point a seizure within the meaning of the Fourth Amendment occurred. *State v. Stroud,* 30 Wn. App. 392, 394, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982).

A seizure occurs if "'in view of all the circumstances surrounding the incident, a reasonable person would have

---

[1] *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

believed that he was not free to leave.'" *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)). Here, DeArman contends that he was seized when Deputy Ross activated his emergency lights. This court has held that a seizure occurs when police officers pull up behind a parked vehicle and activate their emergency lights and high beam headlights. *State v. Stroud, supra.* In that case, under similar circumstances, we stated that

> the officers' attempt to summon the occupants of the parked car with both their emergency lights and high beam headlights constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative.

*Stroud,* 30 Wn. App. at 396. Thus, it is clear that DeArman was seized when Ross pulled up behind him and activated his emergency lights.

We next address the issue of whether the seizure was reasonable. *See Stroud,* 30 Wn. App. at 396. A seizure is reasonable only if an officer has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *State v. Larson,* 93 Wn.2d 638, 644, 611 P.2d 771 (1980) (quoting *Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979)); *see also State v. Kennedy,* 107 Wn.2d 1, 5, 726 P.2d 445 (1986).

Two cases, *State v. Stroud, supra,* and *State v. Larson, supra,* are factually similar to the case before us and control its outcome. In *Stroud,* officers signaled a parked automobile because it was unusual for an automobile to be parked in a high crime area late at night. The court in that case held that the seizure was unreasonable because the officers were unable to articulate specific, objective facts upon which to base a reasonable suspicion that the person stopped was engaged in criminal activity. *Stroud,* 30 Wn. App. at 399.

In *Larson,* officers stopped an automobile and questioned a passenger, initially because the automobile was illegally parked and was in a high crime area near a closed park late at night, and then because it began to pull away as the patrol car approached. *Larson,* 93 Wn.2d at 642–43. The court concluded that stopping the automobile and questioning the passenger was not reasonable under these facts. *Larson,* 93 Wn.2d at 643.

*Larson's* holding is not limited to a determination of the passenger's rights. The court also held that neither the fact that the automobile was stopped late at night in a high crime area nor the fact that it pulled away when approached provided a reasonable and articulable suspicion that the occupants of the automobile were engaged in criminal conduct. *Larson,* 93 Wn.2d at 643. There was no evidence that the car had stopped more than momentarily, and, as far as the officers knew, it could have stopped for any of many legitimate reasons. *Larson,* 93 Wn.2d at 643. The court also expressly concluded that the fact that the driver began to pull away when the police approached could not be a basis for the decision to stop because the police had already made that decision before they even approached the automobile. *Larson,* 93 Wn.2d at 643.

*Larson* and *Stroud* support the appellant's position. First, the simple fact that DeArman remained motionless at a stop sign for 45 to 60 seconds does not rise to the level of providing a reasonable suspicion that he was engaged in criminal activity. Second, once an officer has made the decision to stop an automobile, the fact that the automobile began to pull away when the officer approached cannot be used to support the decision to stop. *Larson,* 93 Wn.2d at 643. Moreover, Ross testified that his initial decision to stop DeArman was based on his concern that DeArman might be disabled. Once it became apparent that DeArman was *not* disabled, Ross had no reason to proceed with the stop and no right to compel DeArman to produce identification.

## II

The State alternatively contends that the stop was permissible under the rationale set forth by the court in *State v. Chisholm,* 39 Wn. App. 864, 696 P.2d 41 (1985). In *Chisholm,* a police officer stopped a truck to warn its occupants that a hat was about to blow out of the truck bed. He then observed a can of beer between two people he knew to be minors and arrested them. Conducting a search incident to arrest, he discovered marijuana. The court refused to suppress the marijuana as the fruit of an illegal stop, holding that whether a stop made for noncriminal, noninvestigatory purposes is reasonable depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform "community caretaking functions." *Chisholm,* 39 Wn. App. at 866–67.

The *Chisholm* exception should be cautiously applied. As noted in *United States v. Dunbar,* 470 F. Supp. 704, 708 (D. Conn.), *aff'd,* 610 F.2d 807 (2d Cir. 1979), cited by the *Chisholm* court, there is a real risk of abuse in allowing even well–intentioned stops to assist. *Cf. State v. Lynd,* 54 Wn. App. 18, 21, 771 P.2d 770 (1989) (to come within the emergency exception to warrant requirement, court must be satisfied the emergency is not simply a pretext for conducting an evidentiary search).

Applying *Chisholm* to the facts presented here, it nevertheless cannot justify the seizure. As the trial court found, Officer Ross may reasonably have had legitimate questions about whether DeArman needed assistance. Arguably, these questions were not resolved even after Ross observed DeArman drive the vehicle safely through the intersection and stop appropriately 50 feet from the intersection.

It is indisputable, however, that once Ross found that the driver was not disabled his concerns were fully dispelled. Indeed, Ross himself testified that he realized the vehicle was not disabled but proceeded with the stop because he had become "suspicious." Irrespective of the

earlier events, such generalized suspicion cannot justify the subsequent stop and seizure. *See Larson,* 93 Wn.2d at 643. We therefore reverse the trial court's denial of DeArman's motion to suppress.

COLEMAN, C.J., and WINSOR, J., concur.