[No. 12166-2-II.  Division Two.  February 12, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES M. HUTCHISON, *Respondent.*

*James P. Miller, Prosecuting Attorney,* and *Nelson E. Hunt, Deputy,* for appellant.

*Rodney M. Benjamin,* for respondent (appointed counsel for appeal).

SCHUMACHER, J.*—The State appeals the trial court's order suppressing evidence and the resulting dismissal of charges of possession of a controlled substance with intent to deliver against James M. Hutchison.

The following facts are undisputed. Officer Blair of the Centralia Police Department went to the Hallmark Inn to investigate a person who was lying in the parking lot, apparently unconscious. The individual, later identified as Hutchison, was lying on his back with his feet in a parking stall. The officer attempted to rouse Hutchison and lifted him to his feet. Hutchison staggered about in a stupor so the officer seated him in the back of the patrol car. Officer Blair did not know the cause of Hutchison's condition but did not believe the man needed medical attention so did not take him to a hospital. At the same time the officer believed Hutchison would be in physical danger if left in the parking lot.

Officer Blair attempted to communicate with Hutchison but the man was unresponsive to the officer's questions and had to be awakened several times. In an effort to determine whether Hutchison carried identification indicating an address where he could be taken or what other disposition could be made of him, the officer conducted a search of Hutchison's clothing. Officer Blair found a wallet in Hutchison's pants but it contained no identification. Continuing the search to an inner jacket, the officer found baggies, folded bindles, and a plastic box containing razor blades. Searching further, Officer Blair discovered three rolled baggies containing marijuana, and a leather pouch containing

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division Two, pursuant to CAR 21(c).

white powder residue in plastic bags and a small, empty vial. Hutchison was then taken to the police station where he finally managed to provide Officer Blair with his name.

Hutchison was later charged with two counts of possession of a controlled substance with intent to deliver. At a pretrial suppression hearing, the trial judge found that Officer Blair was searching for identification, not for "elements of a crime", and that no medical emergency existed at the time. From the findings the court concluded that the State failed to meet its burden of showing a sufficient emergency or exigent circumstances to allow a warrantless search. The State assigns error to the finding that no medical emergency existed and the conclusion that the State failed to show a sufficient emergency or exigent circumstances.

As a general rule, warrantless searches are per se unreasonable. *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984). However, an emergency situation can justify a warrantless search. *See, e.g., State v. Loewen,* 97 Wn.2d 562, 647 P.2d 489 (1982); *State v. Jordan,* 79 Wn.2d 480, 487 P.2d 617 (1971). In order for a warrantless search to be valid under the medical emergency exception, the court must be satisfied that the search was motivated by a perceived need to render medical assistance. *Loewen,* at 568. The State must establish that the officer subjectively believed a medical emergency existed and that such belief was reasonable. The trial court's finding that no medical emergency existed in this case is supported by the evidence.

However, this does not end the inquiry. It has been recognized and accepted in numerous federal and state court decisions that police officers modernly are expected to render aid and assistance on a regular basis to persons who, although perhaps not in need of immediate professional medical treatment, are in danger and in need of help. Searches performed as a part of providing such aid, if reasonable and in good faith, are generally allowed. As noted

by Professor LaFave, the rule is essentially one of common sense:

[E]vidence of crime is sometimes inadvertently come by when a person is searched for some purpose not directly tied to the objective of detecting criminal activity. The policeman, as a jack–of–all–emergencies, has "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by default or design he is expected "to aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "to provide other services on an emergency basis." If a reasonable and good faith search is made of a person for such a purpose, then the better view is that evidence of crime discovered thereby is admissible in court.

(Footnotes omitted.) 2 W. LaFave, *Search and Seizure* § 5.4(c) (2d ed. 1987).

The services expected of and received from local police, unrelated to criminal investigations, have been characterized as "community caretaking functions". *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973). In *State v. Chisholm,* 39 Wn. App. 864, 696 P.2d 41 (1985), an officer stopped a pickup truck solely to warn the occupants that a hat was about to blow off the bed of the truck, arrested minors found in possession of beer, and searched the truck, finding marijuana. Upholding the stop and search of the vehicle, this court stated:

[A]n individual's interest in proceeding about his business unfettered by police interference must be balanced against the public's interest in having police officers perform services in addition to the traditional enforcement of penal and regulatory laws. This latter interest is sometimes characterized as "community caretaking functions."

(Footnote and citation omitted.) *Chisholm,* at 867.

Recognizing the potential for abuse, the community caretaking functions justification for a warrantless search must be carefully applied and the "court must be satisfied the emergency is not simply a pretext for conducting an evidentiary search." *State v. DeArman,* 54 Wn. App. 621, 626, 774 P.2d 1247 (1989) (citing *State v. Lynd,* 54 Wn. App. 18, 21, 771 P.2d 770 (1989)).

In this instance, it is undisputed that at the time of the search, Hutchison was in need of aid and assistance. Officer Blair had a reasonable and legitimate concern that Hutchison would be in danger if abandoned in the parking lot. The trial court found that the officer did not search Hutchison for criminal investigatory purposes but in an effort to determine what should be done with him. Courts of other jurisdictions have upheld numerous searches under similar circumstances. *United States v. Nord,* 586 F.2d 1288, 1290–91 (8th Cir. 1978) (officers justified in entering apartment when they reasonably believed the occupant to be unconscious and in need of assistance); *United States v. Haley,* 581 F.2d 723 (8th Cir. 1978) (search of his nearby automobile for identification, finding illegal firearm, where man unconscious on street); *People v. Smith,* 47 Ill. 2d 161, 265 N.E.2d 139 (1970) (search for identification of man found unconscious in hallway); *State v. Miller,* 486 S.W.2d 435 (Mo. 1972) (search to assist man found unconscious in public rest room).

Officer Blair's community caretaking duties required that he render aid to Hutchison who, if allowed to remain lying in the parking lot or staggering about in an impaired condition, would have been in danger of injury or death. The only reasonable option for the officer was to ascertain Hutchison's identity and any information that would aid in his disposition. Therefore, the search was not an unreasonable search prohibited by the state or federal constitutions. The trial court should have admitted the evidence.

Accordingly, we reverse and remand.

PEARSON and UTTER, JJ. Pro Tem., concur.