FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 NOV 12 AM 10: 30

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69149-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| PAUL ALVIN KLEVER, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: November 12, 2013 |

BECKER, J. — While investigating a suspicious van parked late at night behind a fast-food restaurant, a Bellingham police officer arrested Paul Klever, a passenger in the van, for violating a no-contact order. On appeal, Klever contends that he was unlawfully seized before his arrest when the officer's patrol car effectively prevented the van from leaving. But substantial evidence at the suppression hearing supported the trial court's finding that the patrol car did not block the van. And the trial court correctly concluded that the officer's actions in illuminating the van with a spotlight and flashlight, speaking briefly with the van's occupants, and asking for identification did not elevate the encounter into a seizure under article I, section 7 of the Washington Constitution. Accordingly, we affirm Klever's conviction for felony violation of a no-contact order.

FACTS

Shortly after midnight on March 28, 2012, Bellingham Police Officer Craig Johnson noticed an occupied van at the far end of the parking lot behind a Jack in the Box restaurant. The drive-through window was open, but the dining area of the restaurant was closed.

The van was backed into a parking stall about 100 feet from the restaurant, near the cement enclosure for the garbage dumpster. No other cars were parked nearby. The area of the parking lot near the van was bounded by vegetation and forest. Officer Johnson patrolled the area regularly and knew that the restaurant did not allow overnight parking. In the past, restaurant management had asked him to check on suspicious vehicles parked late at night.

When Officer Johnson saw the van's license plate, he realized that he had spoken about the same van with a Whatcom County Sheriff's Office deputy earlier in the evening. The deputy told him the owner of the van was possibly involved in the delivery of a controlled substance. At that time, Johnson also learned that the van was registered to a woman and that it had not been reported stolen.

Officer Johnson drove his marked patrol car over to the van and parked at an angle to the van, with the passenger-side door of the patrol car perpendicular to the driver's door on the van. The position of the patrol car did not prevent the van from moving. Johnson did not activate his overhead flashing lights but

turned on the side spotlight because of the darkness. A woman sat in the driver's seat. The man in the front passenger seat, later identified as Paul Klever, was "bent over and moving,"[1] as if he were trying to conceal himself.

Officer Johnson got out of the patrol car and walked over to the van. Using a flashlight to illuminate the interior of the van, he asked the occupants through the open driver's window why they were in the parking lot. Klever replied that the two were just talking and had not purchased any food from the restaurant. When Johnson asked for identification, Klever identified himself orally and provided his date of birth and the last four digits of his social security number. Both the officer and the occupants used "a social and conversational tone."[2] The conversation lasted no more than five minutes.

Upon checking with dispatch, Officer Johnson learned that a no-contact order prohibited Klever's contact with the driver of the van. He then arrested Klever. After being advised of his Miranda[3] rights, Klever acknowledged that he knew the court order prohibited any contact with the driver.

The State charged Klever with felony violation of a no-contact order (domestic violence). Prior to trial, he moved to suppress the evidence obtained after the contact with Officer Johnson. He argued that he was unlawfully seized when Johnson approached the van, illuminated the occupants with the flashlight,

---

[1] Clerk's Papers at 77.
[2] Clerk's Papers at 77.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and then asked for identification. The trial court denied the motion, concluding that the encounter was a social contact and that Klever was not seized until he was arrested.

A jury found Klever guilty as charged, and the court imposed a standard range sentence. The court entered written CrR 3.5 and CrR 3.6 findings of fact and conclusions of law on March 19, 2013, after Klever filed his opening brief.

ANALYSIS

Klever contends that he was unlawfully detained when Officer Johnson parked his marked patrol car near the front of the van and effectively blocked it from leaving. He maintains that because there were no articulable facts suggesting possible criminal activity, all evidence obtained after the seizure must be suppressed. Because the officer's prearrest encounter with Klever involved only a social contact, however, we need not determine whether the circumstances also justified an investigatory detention. The evidence developed at the suppression hearing amply supports the trial court's conclusion that Klever was not detained prior to his arrest.

As part of their "community caretaking" function, police officers are permitted "to approach citizens and permissively inquire as to whether they will answer questions." State v. Nettles, 70 Wn. App. 706, 712, 855 P.2d 699 (1993), review denied, 123 Wn.2d 1010 (1994). A police officer's conduct in engaging a

citizen in a public place in conversation and asking for identification does not, without more, raise the encounter to an investigatory detention requiring an articulable suspicion of wrongdoing. State v. Young, 135 Wn.2d 498, 511, 957 P.2d 681 (1998).

Under article I, section 7 of the Washington Constitution, a seizure occurs only when "considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). This standard is "a purely objective one, looking to the actions of the law enforcement officer." Young, 135 Wn.2d at 501. Police actions that will likely result in a seizure include:

> "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

Young, 135 Wn.2d at 512, quoting United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

Klever bears the burden of establishing that a seizure occurred in violation of article I, section 7. State v. Harrington, 167 Wn.2d 656, 664, 222 P.3d 92 (2009). We review the findings of fact entered following a suppression hearing for substantial evidence. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266

(2009). Whether those facts constitute a seizure is an issue of law that we review de novo. Harrington, 167 Wn.2d at 662.

The evidence presented at the suppression hearing was essentially undisputed. Officer Johnson drove his patrol car up to the parked van without activating his emergency lights. Cf. State v. DeArman, 54 Wn. App. 621, 624, 774 P.2d 1247 (1989) (seizure occurred when police officer pulled up behind car and activated emergency lights). He then got out of his patrol car, walked over to the driver's side of the van, and spoke briefly in a conversational tone of voice with the occupants through an open window. Johnson, who was the only officer present, did not display his weapon, direct Klever or the driver to get out of the van, or make any other demands for information. Klever provided his identification orally, and Johnson did not request or retain a driver's license or other form of identification. See State v. Coyne, 99 Wn. App. 566, 572, 995 P.2d 78 (2000) (officer's removal of defendant's driver's license or identification from defendant's presence to conduct warrants check constitutes a seizure). Nor did the use of a spotlight and flashlight to illuminate what would otherwise be visible in daylight constitute an unreasonable intrusion. See State v. O'Neill, 148 Wn.2d 564, 579, 62 P.3d 489 (2003).

Klever's arguments on appeal rest solely on the assertion that Officer Johnson parked his patrol car in a way that effectively blocked the van from moving. But this contention is based on Klever's testimony during the defense's

case at trial. No comparable evidence was presented during the suppression hearing. Johnson's testimony at the suppression hearing, which he illustrated by means of an aerial photograph of the parking lot, supported the trial court's finding that "the van was absolutely able to move."[4] Moreover, Klever sat in the passenger seat of the van while Johnson spoke with the occupants through the driver's open window. He has not identified any circumstances suggesting that he was not free to get out of the van at any time and walk away. Cf. State v. Beito, 147 Wn. App. 504, 510, 195 P.3d 1023 (2008) (officer stood outside passenger door and physically blocked passenger from leaving).

Viewed objectively, Officer Johnson's actions did not involve a sufficient display of authority to elevate his contact with Klever into a seizure. See State v. O'Neill, 148 Wn.2d at 577 (police officer did not seize occupant by approaching car parked late at night near recently burglarized building, illuminating the car with spotlight and flashlight, asking the driver to roll down window and try to start the car, and asking for identification). Consequently, Klever was not seized until Johnson arrested him for violation of the no-contact order. The trial court did not err in denying the motion to suppress.

Klever also assigns error to the trial court's failure to enter written findings of fact and conclusions of law after ruling on his motion to suppress. See CrR

---

[4] Clerk's Papers at 77.

No. 69149-0-I/8

3.5; CrR 3.6(b). As indicated, the trial court entered written CrR 3.5 and CrR 3.6 findings of fact and conclusions of law after Klever filed his opening brief.

We will not reverse a conviction for the late entry of findings and conclusions unless the delay prejudiced the defendant or the findings and conclusions were tailored to address the issues raised in the defendant's appellate brief. State v. Cannon, 130 Wn.2d 313, 329-30, 922 P.2d 1293 (1996). Here, the trial court's thorough and detailed written findings and conclusion accurately reflected the evidence presented during the suppression hearing, the parties' arguments, and the court's oral decision. Klever has not alleged or demonstrated that the written findings and conclusions are inadequate to permit appellate review or that the delayed entry was in any way prejudicial. Neither reversal nor remand is therefore warranted. See State v. Brockob, 159 Wn.2d 311, 344, 150 P.3d 59 (2006); State v. Cannon, 130 Wn.2d at 330.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, A.C.J.

Dwyer, J.

-8-