[No. 10416–8–III. Division Three. October 30, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. MARTY
DEAN MARKGRAF, *Appellant.*

*Jeffrey Barker,* for appellant (appointed counsel for appeal).

*Gary A. Riesen, Prosecuting Attorney,* and *Douglas J. Shae, Deputy,* for respondent.

GREEN, A.C.J.—Marty Dean Markgraf was charged with unlawful possession of cocaine. The motion to suppress evidence obtained during a search and seizure was denied and he was found guilty on stipulated facts. The denial of his motion to suppress presents the sole issue on appeal. We reverse and dismiss the charges.

During a CrR 3.5 hearing, Officer David Rinehart of the Chelan Police Department testified he was notified by radio dispatch at 6:50 p.m. on February 25, 1989, that a call had been received regarding a vehicle which had been parked for hours on Highland Street and was occupied by a female who might be in trouble. Officer Rinehart, accompanied by two reserve officers, promptly responded in a marked patrol car equipped with an overhead emergency light rack. As he approached the area, Officer Rinehart observed a red vehicle parked alongside Highland Street with two occupants. Officer Rinehart pulled up alongside the vehicle and, using his alley light, saw one male in the driver's seat and one in the rear seat on the passenger side.[1] No female was observed.

From his vehicle, Officer Rinehart asked, "What's going on? What are you guys doing?" The driver, later identified as Mr. Markgraf, stated, "We're just looking at the lights." The officer described Mr. Markgraf's facial expression as dazed. Based solely upon the dazed expression, Officer Rinehart left his patrol car, walked alongside the driver's door and asked the driver for identification. As Mr. Markgraf began to fumble for his wallet, the officer asked him to put his hands up so they could be seen and "he dropped everything he had in his lap." Officer Rinehart then

---

[1] The passenger was later identified as Mr. Markgraf's partially retarded stepson. No charges were brought against him.

observed a syringe partially full of coffee colored liquid in Mr. Markgraf's lap. The officer concluded the syringe was drug paraphernalia, confiscated it and ordered Mr. Markgraf to get out of his vehicle. Mr. Markgraf did so and was promptly advised of his rights. He then consented to a search of his vehicle, which disclosed numerous paraphernalia items, including a spoon found on the seat where Mr. Markgraf had been sitting.

Mr. Markgraf contends the request for identification and subsequent seizure exceeded the purpose of the original stop, which was to check the welfare of a woman who might be in trouble. He further contends there were no circumstances suggesting criminal activity. Consequently, he argues, his motion to suppress should have been granted.

Warrantless searches and seizures are per se unreasonable and violate constitutional protections. The State has the burden to rebut this presumption by establishing the existence of one of the carefully delineated exceptions to the warrant requirement. *State v. Leach,* 113 Wn.2d 735, 738, 782 P.2d 1035 (1989). One of those exceptions is the community caretaking function outlined in *State v. Chisholm,* 39 Wn. App. 864, 696 P.2d 41 (1985).

An analysis of whether Mr. Markgraf's constitutional rights were violated begins with a review of the initial intrusion. A stop, although less intrusive than an arrest, is a seizure and must be reasonable under the Fourth Amendment and article 1, section 7 of the Washington Constitution. *State v. Kennedy,* 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). A seizure occurs when police officers pull up to a parked vehicle and activate their emergency lights. *State v. DeArman,* 54 Wn. App. 621, 624, 774 P.2d 1247 (1989) (citing *State v. Stroud,* 30 Wn. App. 392, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982)). Even though the activity under investigation may be as consistent with noncriminal, as well as criminal, activity, the circumstances may justify a brief detention. *Kennedy,* at 6.

The reasonableness of police intrusion within their role as community caretakers requires balancing the individual's interest in freedom from police interference against the public's interest in having police perform community caretaking functions. *Chisholm*, at 866–67. The court went on to state:

> Neither "probable cause" nor "reasonable suspicion" is an appropriate yardstick where the stop was made for noncriminal, noninvestigatory purposes. In that context, whether a particular stop is *reasonable* depends not on the presence or absence of "probable cause" or "reasonable suspicion," but rather on a balancing of the competing interests involved in light of all the surrounding facts and circumstances. *See South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Here, an individual's interest in proceeding about his business unfettered by police interference must be balanced against the public's interest in having police officers perform services in addition to the traditional enforcement of penal and regulatory laws. *United States v. Dunbar*, 470 F. Supp. 704 (D. Conn.), *aff'd*, 610 F.2d 807 (2d Cir. 1979). This latter interest is sometimes characterized as "community caretaking functions." *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973).

(Footnote omitted.) *Chisholm*, at 866–67.

The *Chisholm* rule was applied in *DeArman*. There, an officer observed a vehicle stopped at a stop sign for 45 to 60 seconds. Thinking the car might be disabled, he approached it and activated his emergency light. The vehicle then drove through the intersection and pulled over to the side of the road. The court held once the officer realized the car was not disabled, there was no further need of a stop or request for identification. *DeArman*, at 625. Furthermore, even though the officer stated he had become suspicious before the car left the intersection, such generalized suspicion did not justify a subsequent stop and seizure. Compare *State v. Hutchison*, 56 Wn. App. 863, 785 P.2d 1154 (1990).

Here, the citizen's report justified Officer Rinehart's initial contact to determine whether the occupants of the car were experiencing any trouble. Thus, the officer's intrusion was minimal and reasonable in light of the public's demand the police perform community caretaking functions.

 The second inquiry is whether the further intrusion to request identification was reasonable. *State v. Williams,* 102 Wn.2d 733, 739, 689 P.2d 1065 (1984). Reasonableness must be analyzed in light of the particular circumstances facing the officer. *State v. Lesnick,* 84 Wn.2d 940, 944, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975). Three factors are to be considered: (1) the purpose of the stop, (2) the degree of physical intrusion upon the suspect's liberty, and (3) the length of time the suspect is detained. *State v. Wheeler,* 108 Wn.2d 230, 235, 737 P.2d 1005 (1987) (citing *Williams,* at 740). The purpose of the stop must be related to an investigation focused on the detainee. *Williams,* at 740–41. The community caretaking exception should be cautiously applied. *DeArman,* at 626 (citing *United States v. Dunbar,* 470 F. Supp. 704, 708 (D. Conn.), *aff'd,* 610 F.2d 807 (2d Cir. 1979)).

After the initial exchange of conversation between Officer Rinehart and Mr. Markgraf, the officer chose to intrude further due to Mr. Markgraf's dazed expression. Although the request for identification was a minimal intrusion, it was not warranted. No investigation was in progress, nor had a crime been reported. The occupants of the car were not experiencing any trouble, their location was consistent with looking at city lights, no female was in the car and there was no evidence the car had been there for hours. As noted in *Williams,* at 741:

> A citizen's right to be free of governmental interference with his movement means, at a minimum, that when such interference must occur, it be brief and related directly in inquiries concerning the suspect.

The only rationale given for pursuing the investigation was the "dazed, confused look" on Mr. Markgraf's face. Given the fact it was night and a spotlight or alley light from the police car was shining in his face, it was not an unnatural reaction particularly in the absence of any other objective facts. Further, Mr. Markgraf was not known to the officer as someone with a prior criminal history. The reason for the stop was satisfied and the detention should

514

have terminated once the officer determined no caretaking was needed. The motion to suppress the evidence seized in the subsequent search should have been granted. *Williams,* at 742.

We reverse and dismiss the charges.

THOMPSON and SHIELDS, JJ., concur.