17 P.3d 682 (2001)
STATE of Washington, Appellant,
v.
Matthew Glynn O'NEILL, Respondent.
No. 45163-4-I.
Court of Appeals of Washington, Division 1.
February 12, 2001.
*685 Dana M. Nelson, Seattle, for appellant.
Rosemary Hawkins Kaholokula, Bellingham, for respondent. *683
*684 KENNEDY, J.
A police officer approached a parked car in the parking lot of a closed supermarket in the early-morning hours, and asked the man sitting in the driver's seat for identification. The man, who police later determined to be Matthew Glynn O'Neill, claimed he had no identification, admitted that he had been driving on a suspended driver's license, and gave the officer a false name. Suspecting that O'Neill was not who he claimed to be, the officer then asked him to step out of the car for a pat-down search for identification. As O'Neill was stepping out of the car, the officer saw on the floorboard of the car a spoon containing a granular substance, which the officer, based on training and experience, immediately recognized as narcotics paraphernalia, i.e., a "cook spoon." The officer searched the car, discovered a baggie filled with cocaine and arrested the man. Based on State v. Markgraf, 59 Wash.App. 509, *686 513-14, 798 P.2d 1180 (1990), the trial court concluded that the officer's initial request for identificationwhich the officer made absent any articulable suspicion that O'Neill was involved in criminal activityviolated article 1, section 7 of the Washington Constitution. As a result, the court suppressed the cocaine as fruit of the poisonous tree. The State appeals this ruling, arguing that the trial court misinterpreted Markgraf. We conclude that the trial court properly interpreted Markgraf, but contrary to the ruling in that case, we hold that the officer did not seize O'Neill merely by asking him for identification. A seizure did occur when the officer asked O'Neill to step out of the car for a pat-down search for identification. This seizure was reasonable because of the nexus with the admitted criminal activity of driving on a suspended license and the need to properly identify O'Neill; moreover the officer had probable cause to arrest O'Neill for driving on a suspended license. When O'Neill stepped out of the car, the officer saw the cook spoon in plain view and immediately recognized the incriminating nature of this evidence. Objectively measured, the officer had probable cause to arrest O'Neill at that point for possession of a controlled substance, i.e., the residue on the spoon. Although the officer did not place O'Neill under formal arrest until after the search of the vehicle, the arrest and search were reasonably contemporaneous. Thus, the search did not violate article 1, section 7 of the Washington Constitution, because it was incident to arrest. We therefore reverse the trial court's order suppressing the cocaine.

FACTS
At approximately 1:15 a.m. on June 7, 1999, Bellingham Police Sergeant Terry West drove by a closed supermarket that had been the target of recent burglaries and noticed a car with fogged windows parked in the supermarket's parking lot near a telephone booth. He pulled up approximately six to eight feet behind the car, illuminated it with a spotlight, and entered the car's license plate number into the police computer. After learning that the car recently had been involved in two drug offenses, Sergeant West approached the car but did not activate his emergency lights and did not draw his weapon. Sergeant West asked the man in the driver's seat of the car what he was doing parked at a closed business at that hour of the morning. The man, who police later learned was Matthew Glynn O'Neill, told Sergeant West that he had driven the car from Birch Bay and stopped to use the nearby payphone to call a friend. O'Neill explained that he was still there because his car would not start.
After approximately one minute of conversation with O'Neill, Sergeant West concluded that "[t]here was nothing to indicate that a crime was going on." Nevertheless, Sergeant West asked O'Neill for identification. O'Neill informed Sergeant West that he had none, and admitted that he had been driving on a suspended driver's license. At Sergeant West's request, O'Neill attempted to start the car, albeit unsuccessfully. O'Neill then told Sergeant West that his name was Harold Macomber, the man to whom the car was registered. At this point, Sergeant West believed "that there was a possibility that [he] was dealing with somebody who was not who he said he was[,]" and was "concerned he wasn't getting a straight story." He therefore asked O'Neill to step out of the car for a pat-down search for identification. As O'Neill got out of the car, Sergeant West saw on the car's floorboard a spoon containing a granular substance, which he immediately recognizedbased on his narcotics training and more than 20 years of experience as a police officerto be a "cook spoon for narcotics." Sergeant West asked O'Neill if he could search the car. O'Neill initially refused and told Sergeant West that he would have to get a warrant. Sergeant West responded that he could arrest O'Neill for possession of drug paraphernalia and then conduct a search incident to that arrest. O'Neill continued to insist, for a while, that the officer needed a warrant to search the vehicle, but he ultimately consented, and Sergeant West searched the car, discovering a crack pipe and a baggie filled with cocaine. He arrested O'Neill for unlawful possession of cocaine and the State charged him accordingly.
*687 Before trial, O'Neill filed a motion to suppress "all evidence gathered as a result of the illegal stop of Mr. O'Neill" under article 1, section 7 of the Washington Constitution. After hearing testimony from Sergeant West and O'Neill, the trial court concluded that Sergeant West had the right under his community caretaking function to make reasonable investigation of the circumstances of O'Neill being parked in front of the closed store late at night, but that Sergeant West "had no probable cause to believe that [O'Neill] had committed any crime" and "had no reasonable suspicion that any criminal activity was taking place" until O'Neill admitted that he had been driving on a suspended driver's license. Because Sergeant West requested identification before O'Neill made this admission, the trial court reluctantly concluded that Sergeant West's request violated article 1, section 7 of the Washington Constitution. The trial court explained that this conclusion was required by State v. Markgraf, 59 Wash.App. 509, 513-14, 798 P.2d 1180 (1990), a case in which Division Three of this court held that a police officer performing his community caretaking duties was prohibited from requesting identification where no caretaking was needed, no investigation was in progress and no crime had been reported:

Markgraf appears to be authority for the principle that no further inquiry or request to see a driver[']s license is allowed, and that any evidence which is thereafter discovered is inadmissible and should be suppressed.
While that is the law as stated by Division III of the Court of Appeals, a thorough analysis of our state constitution is lacking [in the Markgraf opinion] to support the decision reached. The result of Markgraf is that in the absence of probable cause or articulable facts supporting a reasonable suspicion, a police officer in this state may not simply ask a citizen a question, and if an incriminating answer is given to the question then suppression must follow. Suppose an officer was to walk up to a citizen who under the facts is not seized, and without suspicion asks[,] "do you know who robbed the bank?" If in response the citizen were to reply "I did," then a strict reading of Markgraf would result in a suppression of the evidence. That should not be the law.
. . . .
... But this court is bound by the Markgraf holding. This court invites the state to appeal this decision so that the appellate court in this division can have an opportunity to decide whether or not this division will follow the Markgraf holding. Unless Division I reaches a result contrary to Division III, the holding of Division III is binding on this court.
Clerk's Papers at 18-20. As a result, the trial court suppressed "the evidence obtained by Law Enforcement ... following Sergeant West's request for identification from O'Neill[.]" Clerk's Papers at 102. The trial court also ruled that the search of the vehicle could not be upheld on the basis of consent, O'Neill having acquiesced to the officer's authority only after considerable argument over whether the officer needed a search warrant; therefore the consent was not voluntary. The State appeals these rulings.

DISCUSSION
The State contends that Sergeant West's request for identification and his subsequent search of O'Neill's vehicle did not violate article 1, section 7 of the Washington Constitution; thus, the trial court erred by suppressing the cocaine that Sergeant West subsequently seized from the car as fruit of the poisonous tree. O'Neill contends that even Sergeant West's questions regarding why O'Neill was parked in front of the closed store constituted an unreasonable intrusion into O'Neill's private affairs, contrary to the trial court's determination. See State v. Bobic, 140 Wash.2d 250, 257, 996 P.2d 610 (2000) (explaining that a respondent may challenge a trial court's findings without filing a cross-appeal if the respondent is not seeking affirmative relief). He urges this court to affirm the trial court's suppression of the cocaine because the officer had no right, under the community caretaking function, to question his presence in the parking lot, but should that argument fail, to affirm on the alternative reasoning that the initial *688 request for identification constituted an unconstitutional seizure.
Article 1, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision prohibits unreasonable searches and seizures. State v. Davis, 86 Wash.App. 414, 420, 937 P.2d 1110 (1997). Indeed, when "an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999).
The test for whether a seizure has occurred "under article 1, section 7 is a purely objective one, looking to the actions of the law enforcement officer[.]" State v. Young, 135 Wash.2d 498, 501, 957 P.2d 681 (1998). The person asserting a seizure under article 1, section 7 of the Washington Constitution has the burden of proving a disturbance of his or her private affairs. Id. "`The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference,' but `the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo.'" State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997) (quoting State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996)). "There is a seizure when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." Young, 135 Wash.2d at 510, 957 P.2d 681 (citation omitted).
"`As a general rule, warrantless searches and seizures are per se unreasonable.' " State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996) (citation omitted). Warrantless searches and seizures may, however, be reasonable under "a few `jealously and carefully drawn' exceptions[.]" Ladson, 138 Wash.2d at 349, 979 P.2d 833 (citation omitted). The State bears the burden of showing that a warrantless search falls under an established exception. State v. Johnson, 128 Wash.2d 431, 451, 909 P.2d 293 (1996).
One of these exceptions occurs when an officer approaches and questions a person as part of the officer's community caretaking function. State v. Coyne, 99 Wash.App. 566, 573, 995 P.2d 78 (2000); State v. Reid, 98 Wash.App. 152, 158, 988 P.2d 1038 (1999). "The community caretaking function exception recognizes that a person may encounter police officers in situations involving not only emergency aid, but also involving a routine check on health and safety." State v. Kinzy, 141 Wash.2d 373, 387, 5 P.3d 668 (2000). "Whether a given stop [under the community caretaking function] is unreasonable `depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" State v. Chisholm, 39 Wash.App. 864, 866, 696 P.2d 41 (1985) (citations omitted). In the absence of a seizure, the individual's interest in being free from police intrusion is minimal. Kinzy, 141 Wash.2d at 387, 5 P.3d 668 (citing Markgraf, 59 Wash.App. at 512, 798 P.2d 1180). Another exception to the general rule that warrantless searches are per se unreasonable occurs when an officer conducts a Terry[1] stop by seizing an individual based on specific and articulable facts giving rise to a reasonable suspicion that there is criminal activity afoot. State v. White, 97 Wash.2d 92, 105, 640 P.2d 1061 (1982). Yet another exception is the "plain view" doctrine, which allows the police to seize evidence if (1) they have a prior justification for the intrusion; (2) they inadvertently discover the incriminating evidence; and (3) they immediately recognize the incriminating character of the evidence seized. State v. Bustamante-Davila, 138 Wash.2d 964, 982, 983 P.2d 590 (1999). And yet another exception to the general rule that warrantless searches are per se unreasonable occurs when an officer conducts a search incident to arrest. State v. Harrell, 83 Wash.App. 393, 400, 923 P.2d 698 (1996). Such a search is "based upon the need to prevent destruction of evidence and the need to locate weapons in the possession of the arrested person." Johnson, 128 Wash.2d at 447, 909 P.2d 293 (citation omitted). A search can be incident to arrest only when *689 the search and arrest are reasonably contemporaneous when they are, it does not matter which comes first. State v. McKenna, 91 Wash.App. 554, 560, 958 P.2d 1017 (1998) (citing, inter alia, Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); State v. Smith, 88 Wash.2d 127, 138, 559 P.2d 970 (1977)). But the officer must have probable cause to arrest before commencing the search, i.e., the arrest cannot be justified by the fruits of the search. McKenna, 91 Wash.App. at 560, 958 P.2d 1017 (citing, inter alia, Smith v. Ohio, 494 U.S. 541, 543, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990)).
A. Initial Contact
The trial court found that Sergeant West approached and questioned O'Neill because the officer became suspicious when he noticed O'Neill's car in the supermarket's parking lot in the early morning hours. The record reflects that Sergeant West knew that the supermarket had been closed for more than an hour; knew that the supermarket had been the target of recent burglaries, knew before making contact with the driver that the car had been involved in drug offenses; observed fogged windows indicating that someone had been in the car for some time; did not activate his emergency lights or draw his weapon; and did not block O'Neill's access out of the parking lot.
As an initial matter, after balancing the public interest in having police perform services in addition to traditional enforcement of penal and regulatory laws against O'Neill's right to proceed about his business unfettered by arbitrary interference by law officers, we conclude, as did the trial court, that Sergeant West's initial contact with O'Neill was a reasonable exercise of his community caretaking function. See Chisholm, 39 Wash. App. at 866, 696 P.2d 41; cf. Kinzy, 141 Wash.2d at 388-89, 5 P.3d 668 (pre-seizure encounter with underage girl after 10 p.m. on a school night was a reasonable exercise of community caretaking function where girl was in a high narcotics trafficking area in company of several persons, including one adult male known by officers to be associated with narcotics). The hour was late and the fact that the car had fogged windows indicated that it was occupied and had been parked for a considerable period of time in front of a business that had been closed for more than an hour. That Sergeant West knew, by the time he contacted O'Neill, that the supermarket had been burglarized recently and that the car had been involved in drug offenses does not alter this conclusion. Moreover, following the purely objective test set forth by our Supreme Court, Sergeant West's actions, to this point, would not lead a reasonable person to believe that he or she was not free to leave. See Young, 135 Wash.2d at 501, 957 P.2d 681; see also id. at 514, 957 P.2d 681 (concluding that the shining of a spotlight alone, "without additional indicia of authority," does not constitute a seizure). Thus, O'Neill failed to sustain his burden of proving a disturbance of his private affairs. Accordingly, we conclude that Sergeant West's initial contact with O'Neill did not constitute a seizure of his person under article 1, section 7 of the Washington Constitution.
B. Request for Identification
As discussed above, the trial court felt constrained to follow State v. Markgraf, 59 Wash.App. 509, 798 P.2d 1180 (1990), and concluded, based on that case, that Sergeant West's request for identification violated article 1, section 7 of the Washington Constitution. In Markgraf, police officers responded to a tip that there was a woman in a parked car who might be in trouble. Id. at 510, 798 P.2d 1180. The officers pulled alongside the parked car and shined an alley light on the car. Id. Although the officers did not see a woman in the car, one officer asked the man sitting in the driver's seat what he was doing. Id. The man, who police later learned was Marty Dean Markgraf, responded that he was looking at the lights. Id. "Based solely upon [Markgraf's] dazed expression, [the officer] left his patrol car, walked alongside the driver's door and asked the driver for identification." Id. At this time, the officer observed drug paraphernalia in the driver's lap, including a syringe partially full of coffee-colored liquid. Id. at 511, 798 P.2d 1180. The officer confiscated the syringe, ordered Markgraf out of the car and advised him of his rights. Id. Following a consent search of *690 the car, the officer discovered more drug paraphernalia, including a spoon found on the seat where Markgraf had been sitting. Id. The State charged Markgraf with unlawful possession of cocaine. Id. at 510, 798 P.2d 1180. Markgraf moved to suppress the drug paraphernalia and cocaine, but the trial court denied this motion and Markgraf was ultimately convicted. Id. at 510-11, 798 P.2d 1180.
On appeal, Division Three of this court concluded that the initial contact to determine whether the occupants of the car were experiencing any trouble was reasonable under the officers' community caretaking function. Id. at 512, 798 P.2d 1180. But the court concluded that the officers' request for identification was not reasonable because the reason for the stop had been satisfied and no caretaking was needed. Id. at 513-14, 798 P.2d 1180. Accordingly, the appellate court concluded that the trial court erred by denying Markgraf's motion to suppress the evidence subsequently seized. Id. at 514, 798 P.2d 1180. Thus, the Markgraf opinion stands for the proposition that the community caretaking exception must be so gingerly applied that the intrusion must cease immediately once the person contacted denies a need for assistance, and that the officer may not intrude further by requesting identification without the reasonable suspicion required to conduct a Terry stop. Id. at 513-14, 798 P.2d 1180.
Although the State argues otherwise, the salient facts in the present case are indistinguishable from the facts in Markgraf; thus, the trial court reached the conclusion required by Markgraf. We, however, respectfully disagree with the Markgraf holding and decline to follow it. The Markgraf court did not have the benefit of our Supreme Court's subsequent discussion in Armenta, 134 Wash.2d at 11, 948 P.2d 1280, regarding police questioning with respect to identity. In that case, our Supreme Court explained that a "police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention." Id.
Under Armenta, we conclude that Sergeant West's encounter with O'Neill in the present case did not rise to the level of a seizure when he asked O'Neill for identification. Sergeant West's request for identification, therefore, did not violate article 1, section 7 of the Washington Constitution.
C. Pat Down Search for Identification
In the course of informing Sergeant West that he had no identification, O'Neill admitted that he had been driving on a suspended driver's license, and gave Sergeant West a false name. Any police officer having probable cause to believe that a person has violated the "driving while license suspended or revoked" statute has the authority to arrest the person, even if the offense is not committed in the officer's presence. RCW 10.31.100(3)(e); see also RCW 46.20.342. Thus, at the moment O'Neill admitted that he had driven on a suspended license, Sergeant West had probable cause to arrest him. Although Sergeant West ultimately elected not to arrest O'Neill for this violation, he asked O'Neill to step out of the car for a pat-down search for identification because he suspected that O'Neill was not who he said he was. At this point, Sergeant West was no longer performing his community caretaking responsibilities.
Moreover, a reasonable person in O'Neill's position would not believe that he or she was free to leave, upon being asked to step from the vehicle for a pat-down search. See Young, 135 Wash.2d at 510, 957 P.2d 681. Thus, O'Neill was seized when Sergeant West asked him to step out of the car for a pat-down search. We must determine whether Sergeant West's pat-down search of O'Neill was reasonable under article 1, section 7 of the Washington Constitution.
Our Supreme Court has held that a detention and vehicle search are not reasonable where "the officer has no hope of discovering information regarding the criminal activity that the officer suspects has occurred or is about to occur[.]" Armenta, 134 Wash.2d at 16, 948 P.2d 1280. But such a search and seizure is reasonable if there is a nexus between the criminal activity and something the officer hopes to seize in a *691 search. Id. at 15-16, 948 P.2d 1280. In this case, there is no indication in the record that Sergeant West suspected any criminal activity other than O'Neill's admission of driving while his license was suspended, when he requested the pat-down search. In fact, Sergeant West confirmed O'Neill's explanation for being in the parking lot when he observed that the car would not start. Nonetheless, there is a nexus between the information that Sergeant West hoped to discover in the pat-down search for identification, i.e., O'Neill's true identity, and his admitted criminal activity, i.e., driving with a suspended driver's license. Sergeant West's pat-down search for identification was, therefore, reasonable and did not violate article 1, section 7 of the Washington Constitution.
D. Search of the Car
As discussed above, Sergeant West was justified in asking O'Neill to step out of the car for a pat-down search for identification. When O'Neill opened the car door, Sergeant West inadvertently saw in plain view on the car's floorboard a spoon containing a granular substance, which the officer immediately recognized as a "cook spoon for narcotics." At this point, Sergeant West had the authority to seize this evidence under the "plain view" doctrine. See Bustamante-Davila, 138 Wash.2d at 982, 983 P.2d 590. See also RCW 69.50.505(a)(6) and (b)(1) (drug paraphernalia is subject to seizure without process if the seizure is incident to arrest); RCW 69.50.412(1) (the use of drug paraphernalia to prepare, contain, ingest, inhale or inject a controlled substance is a misdemeanor); RCW 69.50.102(b) (in determining whether an object is drug paraphernalia, the court or other authority should consider, inter alia, the existence of any residue of controlled substances on the object); State v. Williams, 62 Wash.App. 748, 753, 815 P.2d 825 (1991) (existence of residue of controlled substances on an object will support an inference that the object is drug paraphernalia).
The record reflects that Sergeant West believed that he had authority to arrest O'Neill for possession of drug paraphernalia, and so informed O'Neill. Mere possession of drug paraphernalia is not a crime under state law; however use of drug paraphernalia is a misdemeanor under RCW 69.50.412(1). State v. McKenna, 91 Wash.App. at 563, 958 P.2d 1017 (citing RCW 69.50.412(1) and State v. Lowrimore, 67 Wash.App. 949, 959, 841 P.2d 779 (1992)). The State argues that Sergeant West had authority to arrest O'Neill for use of drug paraphernalia. The State apparently bases this argument on the assumption that the misdemeanor of use of drug paraphernalia was being committed in the officer's presence, based on the residue in the cook spoon.
Under RCW 10.31.100 a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the officer's presence, except as provided in the ten subsections of the statute-none of which relates to use of drug paraphernalia as such. The State cites no authority for the proposition that a person commits the misdemeanor of use of drug paraphernalia in the presence of a police officer when the physical evidence would seem to indicate only that the drug paraphernalia had been used at some earlier time, but was not being used when the officer arrived at the scene of the arrest.[2] The State's reliance on State v. Brantigan, 59 Wash.App. 481, 798 P.2d 1176 (1990), is misplaced. There, the defendant conceded that possession of drug paraphernalia would justify a custodial arrest, without distinguishing between mere possession and use. Id. at 483, 798 P.2d 1176. Although the evidence in that case probably would have supported an inference of use of drug paraphernalia in the *692 presence of the officer, id., the issue was not briefed or decided by the Brantigan court.
But we need not decide, in this case, whether the evidence would support an inference of use of drug paraphernalia in the presence of the officer so as to allow a misdemeanor arrest without a warrant, because the record reflects that the officer saw residue on the cook spoon. There is no minimum amount of narcotic drug that must be possessed in order to sustain a felony conviction. Williams, 62 Wash.App. at 751, 815 P.2d 825 (citing State v. Larkins, 79 Wash.2d 392, 394, 486 P.2d 95 (1971) (construing former statute prohibiting illegal possession of a narcotic drug, RCW 69.33.230)). Officer West had probable cause to arrest O'Neill for felony possession of a controlled substance based on the residue on the cook spoon indeed, it was the presence of the residue on the spoon that enabled the officer, based on his training and experience, to recognize the spoon as a cook spoon for narcotics.
We deem it immaterial that the officer apparently believed that mere possession of drug paraphernalia, as opposed to its use, is a crime, or whether the presence of the residue on the spoon gave rise to an inference that the misdemeanor of use of drug paraphernalia was occurring in the officer's presence thereby justifying a custodial arrest, because the officer had probable cause to make a felony arrest when he observed the residue on the cook spoon. Cf. State v. Harrell, 83 Wash.App. 393, 401, 923 P.2d 698 (1996) (although officer conducting search did not subjectively consider defendant under arrest when he detained him, search for explosive device nevertheless a valid search incident to arrest because probable cause to arrest defendant for possession of explosive device existed when the officer conducted the search). Probable cause is an objective inquiry. It exists where facts and circumstances within knowledge of the police are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. Id. at 399-400, 923 P.2d 698. Probable cause does not require proof of guilt beyond a reasonable doubt. State v. Bellows, 72 Wash.2d 264, 432 P.2d 654 (1967). The same facts and circumstances that caused Officer West to recognize the spoon containing residue as a cook spoon for narcotics would warrant a person of reasonable caution in the belief that the residue contained a controlled substance, the possession of which is a felony in this state. We hold that an arresting officer's mistaken belief that he or she has authority to arrest for mere possession of drug paraphernalia does not invalidate an otherwise lawful search incident to arrest where probable cause exists to make a felony arrest for possession of a controlled substance, based on facts and circumstances within the arresting officer's knowledge that would warrant a person of reasonable caution to believe that the defendant has committed the latter offense.
The only remaining question is whether the search of the vehicle that revealed the baggie of cocaine was a search incident to arrest, in that the officer had not yet placed O'Neill under formal arrest when he searched the vehicle. A police officer may conduct a warrantless search incident to arrest as long as probable cause to arrest exists at the time of the search. Harrell, 83 Wash.App. at 400, 923 P.2d 698. Indeed, an officer's subjective intent or policy on whether to arrest for a certain offense is irrelevant "as long as the fruits of the search are not claimed as necessary to support probable cause for the arrest." Brantigan, 59 Wash. App. at 486, 798 P.2d 1176; accord State v. Thomas, 89 Wash.App. 774, 777, 950 P.2d 498, review denied, 135 Wash.2d 1015, 960 P.2d 939 (1998). This is because the "reasons which justify a search incident to arrestto protect the officer and preserve possible evidencecontinue to exist whether or not the defendant is going to be released without an arrest." Id. at 777, 950 P.2d 498. But see McKenna, 91 Wash.App. at 564, 958 P.2d 1017 ("An otherwise lawful custodial arrest will support a search incident to it, provided that the evidence does not show an unconditional decision to release prior to the officer's making the search.").
Here, Officer West had probable cause to arrest O'Neill for driving on a suspended license. The officer reasonably requested to perform a pat-down search for *693 identification. In the course of that, the officer saw the cook spoon containing residue, in plain view. This gave rise to probable cause to arrest for felony possession of a controlled substance. Although the officer told O'Neill that he could arrest him for possession of drug paraphernalia if O'Neill did not consent to a search of the vehicle, and then search incident to arrest, and although the officer ultimately never arrested O'Neill for driving on a suspended license, there is no evidence in the record that the officer made an unequivocal decision to release O'Neill either as a result of driving on a suspended license or for any offense related to the cook spoon, before conducting the search of the vehicle.
An officer may lawfully perform a search incident to a lawful arrest, without additional cause. The arrest need not precede the search so long as it is reasonably contemporaneous with the search. McKenna, 91 Wash.App. at 559-60, 958 P.2d 1017. "The officer must have probable cause to arrest before commencing the search, which is also to say that the arrest cannot be justified by the fruits of the search." Id. at 560, 958 P.2d 1017 (citations omitted). Sergeant West had probable cause to arrest O'Neill before he searched the car, based on the residue on the cook spoon that was in plain view on the car's floorboard; thus, objectively viewed, probable cause for the arrest was not based upon the fruits of the subsequent car search. Accordingly, we hold that the search of the car was reasonable under article 1, section 7 of the Washington Constitution as a search incident to arrest.[3]
In sum, we conclude that the trial court erred by granting O'Neill's motion to suppress. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
COX, J. (concurring).
I agree with the majority that neither the initial contact between O'Neill and the police officer nor the officer's subsequent request for identification, without more, violated article 1, section 7 of the Washington Constitution. I write separately to articulate my view why the request for identification, alone, did not constitute a "seizure."
In State v. Young,[1] our Supreme Court rejected applying the test for a seizure that the United States Supreme Court first articulated in California v. Hodari D.[2] to evaluate an alleged violation of article 1, section 7. Instead, our Supreme Court chose to adhere to the Mendenhall[3] test that prior Washington cases applied. Under that test, a person is "seized" for purposes of article 1, section 7 of the state constitution "only when, by means of physical force or a show of authority, his freedom of movement is restrained.... There is a `seizure' when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[4] This test is an objective one.[5] O'Neill has the burden of proving a disturbance of his private affairs under article 1, section 7.[6]
Looking to the totality of circumstances in the record before us, O'Neill has failed to make out a case that the police officer violated the state constitution. The record is devoid of any evidence that the officer, by his *694 manner, tone of voice, or any other action, did anything to suggest that O'Neill was not free to leave. There is nothing here to suggest that the officer, by show of force or physical authority, restricted O'Neill's freedom of movement. All that the record shows is that the officer requested identification, in a public place, following an initial encounter that did not rise to the level of a seizure.
This is not to say that a request for identification may never constitute a violation of article 1, section 7. Rather, the proof here falls short of showing a violation of the state constitution.
For these and the other reasons stated in the majority, I agree that we should reverse.
BECKER, A.C.J. (dissenting).
A person is sitting in a car parked near a telephone booth in a vacant store parking lot late on a summer night. A police officer pulls up behind him, turns on a spotlight, and keeps it on long enough to run a computer check of the plates. The officer then approaches the car, shines a flashlight in the face of the driver, and motions for him to roll down the window. When the driver complies, the officer asks why he is parked at a closed business. The driver explains that after he stopped to call a friend, his car would not start, and he is waiting for a friend to come with jumper cables.[1] The officer asks him to prove his car does not work, and the driver complies by trying to start it. The officer finally asks him to produce identification. A reasonable person in that situation would not feel free to ignore the officer's request for identification. I respectfully disagree with the majority's seizure analysis and, following Division Three in State v. Markgraf, 59 Wash.App. 509, 798 P.2d 1180 (1990), I would affirm the order suppressing the evidence that came to light after the request for identification.
The majority first discusses whether the officer was engaged in the exercise of his community caretaking function when he approached the car. After concluding that he was, the majority decides that his questioning of the driver and request for identification did not constitute a seizure. These issues should be taken up in reverse order.
The first issue is when the seizure occurred because that is the event that triggers the warrant requirement. The majority eventually concludes that no seizure occurred until the officer asked O'Neill to step out of the car for a patdown search for identification. Majority, at 690.
The second issue, once the event that constitutes a seizure is established, is whether a warrant was necessary to make the seizure legal. If the warrant requirement did not apply until the request for a patdown, there is no reason to look for an exception to the warrant requirement in the earlier stages of the encounter. As the majority correctly concludes, if the seizure did not occur until the officer requested a patdown search for identification, then the seizure was justified not by the community caretaking exception, but because O'Neill had just admitted to driving on a suspended license. Majority, at 690-691. The majority's discussion of the community caretaking exception is therefore unnecessary to its analysis.
My analysis differs from the majority's on the issue of when the seizure occurred. I would hold a seizure occurred earlier when the officer, having spotlighted a parked car and questioned the driver, asked him to produce identification.
Article I, § 7 of the Washington Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Warrantless searches and seizures are per se unreasonable under article I, § 7, unless the state can meet the burden of showing that the seizure comes under an established exception to the warrant requirement. State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999); State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). A seizure exists under article I, § 7 when a police officer restrains a person's freedom of movement by physical force or a show of authority, or when the totality of the circumstances surrounding the incident causes a reasonable person to believe that he *695 or she is not free to leave. State v. Young, 135 Wash.2d 498, 510, 957 P.2d 681 (1998).
Sergeant West pulled up behind O'Neill and spotlighted his car long enough to run a computer check. Then, shining a flashlight into the car, he asked O'Neill to prove he had a legitimate reason for being in the parking lot, including asking him to start the car. O'Neill gave acceptable responses, but the officer prolonged the encounter even further by asking for identification.[2] This increasing level of intrusion amounted to a show of authority considerably greater than in State v. Young, 135 Wash.2d at 514-515, 957 P.2d 681, where a police spotlight alone, without additional indicia of authority, was held not to constitute a seizure of a person in the open, on a public street.
Division Three ruled that circumstances virtually identical to O'Neill's constituted a seizure in State v. Markgraf, 59 Wash.App. 509, 798 P.2d 1180 (1990). The majority declines to follow Markgraf, declaring that Markgraf conflicts with the Washington Supreme Court's ruling in State v. Armenta, 134 Wash.2d 1, 948 P.2d 1280 (1997). There, Armenta and Cruz approached a police officer at a truck stop around 11 a.m. on a Sunday and asked if he knew of a mechanic who could fix their broken down car. The officer did not, but offered to look at their car himself. They accepted his offer. On the way to the vehicle the officer asked them whether they had any identification. Armenta showed a driver's license, but Cruz said he had no identification. Noticing a bulge in Cruz's back pants pocket, the officer asked if that was his wallet. Cruz said no and pulled from the pocket a large wad of bills. Armenta also pulled out three rolls of money and showed them to the officer. The officer called in for a driver's check of the names and birthdates the men had given him, and discovered that Armenta had a suspended license. He then called dispatch for backup and placed the bundles of money in his patrol car for safekeeping. Next he obtained consent to search the car, and found cocaine, leading to a criminal charge against the two men. The trial court ordered suppression of the cocaine as the fruit of an illegal seizure. Upon the State's appeal, Division Three reversed the suppression order.
The Supreme Court accepted review, and reinstated the suppression order. The Supreme Court first held that the officer's request for identification, without more, was not a seizure:
In our judgment, a police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention. We find this reasoning particularly appropriate to the circumstances here, where the police officer requested the identification for some purpose other than investigating criminal activity. It is significant, also, that Armenta and Cruz initiated the contact with Officer Randles, then prolonged it by accepting his offer to assist them with their car.
Armenta, 134 Wash.2d at 11, 948 P.2d 1280. The officer's warrantless retention of the money, however, was a seizure that vitiated consent and rendered the following search illegal.
The Armenta Court based its reasoning on the Fourth Amendment to the federal constitution. Armenta, 134 Wash.2d at 10, note 7, 948 P.2d 1280. O'Neill bases his argument on article I, § 7 of the Washington constitution which is more protective of privacy. State v. Parker, 139 Wash.2d at 493, 987 P.2d 73; State v. Young, 123 Wash.2d 173, 179-80, 867 P.2d 593 (1994). But assuming the reasoning of Armenta to be controlling in this case, the Armenta decision itself emphasizes its reliance on several distinguishing facts that are not present in O'Neill's case.
First, the Court said it was "significant" that Armenta and Cruz initiated the contact with the police officer. Armenta, 134 Wash.2d at 13, 948 P.2d 1280. O'Neill, in contrast, was sitting in a parked car minding his own business when Sergeant West approached him, unsolicited.
*696 Second, the Armenta court stated that a police officer's request for identification when engaging a person in conversation in a public place "does not, alone, raise the encounter to an investigative detention." Armenta, 134 Wash.2d at 11, 948 P.2d 1280 (emphasis added). A person in a parked car with the windows up is not in a public place; and certainly that location is not the equivalent of standing outdoors on the street or at a truck stop. Furthermore, the Court's statement that a request for identification "alone" is not a seizure implies that a request for identification can be a seizure when it is combined with other intrusive acts. Here, as in Markgraf, a seizure occurred because of a combination of intrusions, not just because there was a request for identification.
Third, in Armenta the police officer requested the identification for some reason other than investigating criminal activity. Having agreed to assist two strangers with a broken down car, he was entitled for officer safety reasons to know who he was dealing with. Here, O'Neill did not request the officer's assistance and the officer did not have a non-investigative justification for requesting identification.
Given these distinctions, Armenta does not compel the overruling of Markgraf. Neither the Supreme Court nor Division Three found it necessary to reconcile or overrule Markgraf when analyzing the facts of Armenta. In fact, the Supreme Court has favorably cited Markgraf in a recent discussion of the community caretaking exception to the warrant requirement. See State v. Kinzy, 141 Wash.2d 373, 387, n. 46, 5 P.3d 668 (2000).
Also uncompelling is the objection to Markgraf expressed by the trial court in this case in its oral ruling, see Majority at 687. The court was concerned that under Markgraf, an officer could not ask a bystander "who robbed the bank?" without having an incriminating answer suppressed. These were not the facts of Markgraf and there is no reason to believe that Markgraf would be dispositive in such a different situation.
In short, Markgraf is a rational precedent, its result not at all anomalous in the field of search and seizure. We should follow it. I would affirm the trial court's conclusion, compelled by Markgraf, that a seizure had occurred at least by the time Sergeant West asked for O'Neill's identification, if not sooner.
The next question is whether the seizure was lawful. Because it was warrantless, it was lawful only if covered by one of the exceptions to the warrant requirement. The plain view exception does not apply. At the point when Sergeant West asked for O'Neill's identification, all he had seen was O'Neill's car in a parking lot. And the seizure cannot be justified as a Terry stop, either. Sergeant West testified that at the time he first spoke to O'Neill, "There was nothing to indicate that a crime was going on." Although he said his computer check of O'Neill's license plate number turned up information that the car had been impounded two months previously due to a drug situation, the State acknowledges that the officer did not have a basis for a warrantless investigative detention. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Does the community caretaking exception to the warrant requirement justify the seizure? The State argues that Sergeant West was performing a community caretaking function to ensure that the mini-mart was not about to be burglarized again. The community caretaking function, a recognized exception to the warrant requirement, may apply to a police officer who is rendering aid or assistance, investigating vehicle accidents, or making a routine check on health and safety. State v. Kinzy, 141 Wash.2d at 387, 5 P.3d 668. Like all exceptions to the warrant requirement, it is "jealously and carefully drawn". See State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). It is applied with caution because of the potential for abuse. Kinzy, 141 Wash.2d at 391, 5 P.3d 668.
To come within the community caretaking exception, the police activity must be "totally divorced from a criminal investigation." Kinzy, 141 Wash.2d at 385, 5 P.3d 668. That was not the case here. Ensuring that the store was not about to be burglarized again is a motive associated with criminal investigation, not with concern for O'Neill's welfare.
*697 In the exercise of their community caretaking function, police officers must be able to approach citizens and permissively inquire as to whether they will answer questions. Kinzy, 141 Wash.2d at 387-388, 5 P.3d 668. The non-criminal investigation must be strictly relevant to performance of the community caretaking function, and must end when reasons for initiating the encounter are fully dispelled. Kinzy, 141 Wash.2d at 388, 5 P.3d 668. Sergeant West not did make a permissive inquiry as to whether O'Neill would answer questions. As was the case in Markgraf, there was no reason to request identification from an occupant of a parked car once it was clear that no one in the car had asked for or was in need of police assistance. I would hold that the community caretaking exception does not apply.
Under article 1, section 7 as well as the Fourth Amendment, the degree of intrusion imposed on O'Neill is permissible only with a warrant or where the State demonstrates the applicability of one of the exceptions to the warrant requirement. The State has failed to meet its burden. The suppression order should be affirmed.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] State v. Lowrimore, 67 Wash.App. at 959 and n. 10, 841 P.2d 779 does not provide authority for this proposition. There, the court held that possession of marijuana pipes coupled with bizarre behavior on the part of the defendant gave rise to probable cause to arrest for violation of RCW 69.50.412(1)because RCW 10.31.100(1) authorizes arrest without a warrant when officer has probable cause to believe a person has committed a misdemeanor or gross misdemeanor involving the use of possession of cannabis, even though such use or possession did not occur in the officer's presence. RCW 10.31.100(1) does not, on its face, apply to offenses involving the use of controlled substances other than cannabis, nor to misdemeanor use of drug paraphernalia relating to controlled substances other than cannabis.
[3] This ruling makes it unnecessary for us to address the State's contentions that the trial court erred by refusing to uphold the search on the basis of consent and that the baggie of cocaine would have been inevitably discovered in any event. In passing, we note that neither contention appears to have merit. The trial court's ruling that O'Neill's consent was not freely and voluntarily given is supported by substantial evidence. The inevitable discovery doctrine is seldom an "easy out" for the prosecution.
[1] 135 Wash.2d 498, 957 P.2d 681 (1998).
[2] 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
[3] United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
[4] Young, 135 Wash.2d at 510, 957 P.2d 681.
[5] See State v. Thorn, 129 Wash.2d 347, 352, 917 P.2d 108 (1996) (citing State v. Toney, 60 Wash. App. 804, 806, 810 P.2d 929, review denied, 117 Wash.2d 1003, 815 P.2d 266 (1991) (looking to "particular, objective facts surrounding the encounter")).
[6] Young, 135 Wash.2d at 510, 957 P.2d 681.
[1] CP 14.
[2] The Majority states, at 686, that the officer asked O'Neill to start the car after O'Neill admitted he had been driving on a suspended license. The court's findings, however, state that the request to start the car occurred before the request for identification.